CHALOS & CO, P.C.
*Attorneys for Plaintiff*
Katherine N. Christodoulatos
55 Hamilton Avenue
Oyster Bay, NY 11771
Tel: (516) 714-4300

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID OPPENHEIMER & CO., | |
| Plaintiff, | NO. |
| v. | VERIFIED COMPLAINT |
| ASSOCIATES WAREHOUSING, INC., WILLIAM PARKER ASSOCIATES, INC. and U.S. CUSTOMS AND BORDER PROTECTION, | |
| Defendants. | |

Plaintiff, DAVID OPPENHEIMER & CO. ("OPPENHEIMER") by and through its attorneys, CHALOS & CO, P.C., states pursuant to L.Civ.R. 10.1 that the principal place of business of OPPENHEIMER is 11 Burbridge Street Coquitlam, B.C. V3K 7B2, Canada; the principal place of business of Defendant ASSOCIATES WAREHOUSING, INC. ("ASSOCIATES") is 2845 East Westmoreland Street, Philadelphia, Pennsylvania 19134; the principal place of business of Defendant WILLIAM PARKER ASSOCIATES, INC. ("PARKER") is 2845 East Westmoreland Street, Philadelphia, Pennsylvania 19134; and Defendant U.S. CUSTOMS AND BORDER PROTECTION ("CBP") is a federal agency with an office at 1100 Raymond Boulevard, Newark, NJ 07102 (hereinafter collectively referred to as "Defendants"). As for its Verified Complaint against Defendants, Plaintiff alleges and pleads as follows:

## I.  PARTIES

1.      Plaintiff is a Canada corporation with a principal place of business at: 11 Burbridge Street Coquitlam, B.C. V3K 7B2, Canada, and was the owner of a consignment of 2,160  boxes of fresh grapes laden on board the Motor Vessel MAERSK BRANI, as described in more detail below.

2.       At and during all the times hereinafter mentioned, Defendant ASSOCIATES, was and is a Pennsylvania corporation with an office and place of business located at 2845 East Westmoreland Street, Philadelphia, Pennsylvania 19134.    Defendant is, and at all relevant times, was doing business in this jurisdiction directly and/or through an agent.

3.      At and during all the times hereinafter mentioned, Defendant PARKER, was and is a Pennsylvania corporation with an office and place of business located at 2845 East Westmoreland Street, Philadelphia, Pennsylvania 19134.    Defendant is, and at all relevant times, was doing business in this jurisdiction directly and/or through an agent.

4.      At and during all the times hereinafter mentioned, Defendant CBP was and is a federal agency under the auspices of the Department of Homeland Security ("DHS"), with an office at 1100 Raymond Boulevard, Newark, NJ 07102.

## II . JURISDICTION AND VENUE

5.      This action arises from the breach of a maritime contract, and comprises an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This action falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

6.     This Court also has pendent jurisdiction over all state law claims asserted by the Plaintiff.

7.     Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because the Defendants are subject to the Court's personal jurisdiction.

### III. FACTS AND UNDERLYING CLAIMS

8.     On or about November 8, 2011, a consignment consisting of 2,160 boxes of fresh grapes ("the Cargo"), then being in good order and condition, were delivered to the M/V JENS MAERSK and the shipper and/or its agents in Callao, Peru for transportation to Philadelphia, United States in consideration of an agreed upon freight, pursuant to bill of lading numbers 862893954.

9.     Thereafter, the consignment having been loaded aboard the M/V JENS MAERSK, Voyage No. 1114, the vessel sailed from the port of Callao, Peru.

10.    The shipment was transshipped at the Port of Balboa, Peru, and thereafter, was loaded onto the M/V MAERSK BRANI at the port of Manzanillo, Peru.

11.    The M/V MAERSK BRANI arrived in Philadelphia, United States, on or about November 29, 2011.

12.    Upon discharge of the consignment at Philadelphia, the Cargo of grapes onboard the M/V MAERSK BRANI was randomly selected by Defendant CBP for an intensive inspection.

13.    Accordingly, on December 2, 2011, the Cargo was diverted to a container examination service location of Defendants ASSOCIATES and PARKER, for the CBP inspection.

14.    During the inspection, the Defendants unloaded each carton (in which the Cargo was held) off of the pallets, and roughly handled the Cargo.

15.     When the cartons were placed back into the container, they could not be stacked on pallets, as they had been during shipment, as a result of the damages sustained during the inspection.

16.     A survey of the Cargo was conducted by Philadelphia Cargo-Claim Consultants, wherein the grapes were found to be wet and sticky, scarred, shattered, and crushed, with cap stems not firmly attached.  As a result, the grapes failed to grade U.S. No. 1 account condition.

17.     The surveyor determined that the Defendants' mishandling of the cartons during the inspection caused this damage to the Cargo.

18.     As a result of the damages to the Cargo, the Plaintiff has  sustained a loss in the amount of USD 23,421.47, plus interest, costs and disbursements.

19.     Plaintiff filed a "Claim for Damage, Injury, or Death" with Defendant CBP on August 3, 2012.  *A copy of this claim is attached hereto as Exhibit 1.*

20.     On July 11, 2013, CBP issued a decision rejecting Plaintiff's claim on the basis that CBP is exempt from liability under the Federal Tort Claims Act. *A copy of the CBP's decision is attached hereto as Exhibit 2.*

## AS AND FOR A FIRST CAUSE OF ACTION –
## NEGLIGENCE

21.     Plaintiff repeats and realleges each and every allegation set forth above in Paragraphs 1 through 20, as if fully stated here.

22.     It was reasonably foreseeable that in the event Defendants failed to properly perform their obligations within accepted standards, that injury would result, economic or otherwise.

23.     Plaintiff was a foreseeable party who could suffer injury as a result of the negligent or improper performance of the Defendants' services.

24.   As such, Defendants owed a duty of care to Plaintiff to perform the services each Defendant undertook.

25.   Defendants breached their duty of care to Plaintiff by failing to properly handle and secure the Cargo, and to re-load the Cargo into the container.

26.   Following the Defendants' inspection, the Cargo sustained significant damages.

27.   A survey of the Cargo performed after the inspection found the grapes to be wet, sticky, scarred, shattered, and crushed, with cap stems not firmly attached.

28.   This damage to the cargo was a direct and proximate result of Defendants' negligence and willful failure to properly handle and secure the Cargo.

29.   As a result of the foregoing, Plaintiff has sustained a loss of no less than USD 23,421.47, plus interest, costs and disbursements.

**AS AND FOR A SECOND CAUSE OF ACTION –**
**BREACH OF IMPLIED WARRANTY OF WORKMANLIKE SERVICE**

30.   Plaintiff repeats and realleges each and every allegation set forth above in Paragraphs 1 through 29, as if fully stated here.

31.   The Defendants failed to ensure that the Cargo was handled and secured in the container in a workmanlike manner, causing extensive damages to the Cargo.

32.   As a result of Defendants' actions or omissions, Plaintiff incurred damages of no less than USD 23,421.47, plus interest, costs and disbursements.

**AS AND FOR A THIRD CAUSE OF ACTION –**
**BREACH OF BAILMENT OBLIGATIONS**

33.   Plaintiff repeats and realleges each and every allegation set forth above in Paragraphs 1 through 32, as if fully stated here.

34.     The Defendants were acting as bailees of the Cargo at the time the damages were sustained.  The Defendants were thereby, or through their contractors, agents, or sub-bailees, bailees who warranted and had a legal duty to safely keep, care for and deliver the Cargo in the same condition as when entrusted to them and to perform their services as bailees or to ensure that those services were performed with reasonable care and in a non-negligent and workmanlike manner.

35.     The Defendants breached their bailment obligations and negligently failed to deliver the Cargo to Plaintiff and/or Plaintiff's agents, in as good condition as when entrusted to them.

36.     As a result of the foregoing, the Defendants caused damages to plaintiff in an amount of no less than USD 23,421.47, plus interest, costs and disbursements.

**WHEREFORE,** Plaintiff prays:

1.     That process in due form of law may issue against Defendants citing them to appear and answer all and singular the matters aforesaid;

2.     That Judgment may be entered in favor of Plaintiff against Defendants for the amount of Plaintiff's damages, together with interest and costs and the disbursements of this action;

3.     That this Court will grant Plaintiff such other and further relief as may be just and proper.

Dated:   Oyster Bay, New York
         December 20, 2013

                              Respectfully submitted,

                              CHALOS & CO, P.C.
                              *Attorneys for Plaintiff*
                              DAVID OPPENHEIMER & CO.

                    By:       _Katherine Christodoulatos_
                              Katherine N. Christodoulatos (KC-1226)
                              55 Hamilton Avenue
                              Oyster Bay, New York 11771
                              Tel:  (516) 714-4300
                              Fax: (516) 750-9051
                              E-mail: kchristodoulatos@chaloslaw.com

**LOCAL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, DAVID OPPENHEIMER & CO, certifies that the matter in controversy in this action is not the subject of any other action filed in any other court and is not the subject of any pending arbitration or administrative proceedings.

Dated:   Oyster Bay, New York
         December 20, 2013

                                        Respectfully submitted,

                                        CHALOS & CO, P.C.
                                        *Attorneys for Plaintiff*
                                        DAVID OPPENHEIMER & CO.

                        By:   _Katherine Christodoulatos_
                              Katherine N. Christodoulatos (KC-1226)
                              55 Hamilton Avenue
                              Oyster Bay, New York 11771
                              Tel:  (516) 714-4300
                              Fax: (516) 750-9051
                              E-mail: kchristodoulatos@chaloslaw.com

CHALOS & CO, P.C.
*Attorneys for Plaintiff*
Katherine N. Christodoulatos
55 Hamilton Avenue
Oyster Bay, NY 11771
Tel: (516) 714-4300

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DAVID OPPENHEIMER & CO.,

               Plaintiff,

    v.

ASSOCIATES WAREHOUSING, INC.,
WILLIAM PARKER ASSOCIATES, INC. and
U.S. CUSTOMS AND BORDER
PROTECTION,
               Defendants.

NO.

VERIFICATION OF COMPLAINT

Pursuant to 28 U.S.C. §1746, KATHERINE N. CHRISTODOULATOS, Esq., declares under the penalty of perjury:

1.     I am a Member of the law firm of CHALOS & CO, P.C., counsel for the Plaintiff, DAVID OPPENHEIMER & CO.

2.     I have read the foregoing Verified Complaint and know the contents thereof; and

3.     I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys.

4.     The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a foreign corporation or other business entity, no officer or director of which is presently within this District. I am authorized to make this verification.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Oyster Bay, New York
       December 20, 2013

                                    CHALOS & CO, P.C.
                                    Attorneys for Plaintiff
                                    DAVID OPPENHEIMER & CO.

By:     *Katherine Christodoulatos*

                                    Katherine N. Christodoulatos (KC-1226)
                                    55 Hamilton Avenue
                                    Oyster Bay, New York 11771
                                    Tel:  (516) 714-4300
                                    Fax: (516) 750-9051
                                    E-mail: kchristodoulatos@chaloslaw.com

# EXHIBIT 1

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Customs and Border Protection - Room 102<br>2nd & Chestnut Sts.<br>Philadekphia, PA 19106<br>ATTN: CET TEam | David Oppenheimer & Co.<br>c/o Chalos & Co, P.C.<br>55 Hamilton Avenue<br>Oyster Bay, New York 11771 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY  ☐ CIVILIAN | 4. DATE OF BIRTH | 5. MARITAL STATUS<br>N/A | 6. DATE AND DAY OF ACCIDENT<br>12/02/2011 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

A container of grapes onboard the M/V Maersk Brani was randomly selected by U.S. Customs and Border Protection ("CBP") for an intensive inspection. Accordingly, on December 2, 2011, the container was diverted to a container examination service location, Associates Warehousing, for the CBP inspection. During the inspection, each carton was unloaded off of the pallets. The cartons were roughly handled, and while placed back in the container, could not be stacked on pallets as intended, due to the damages sustained.

**9.**                                                                 **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

David Oppenheimer & Co., Suite 101 - 11 Burbidge Street Coquitlam, B.C. V3K 7B2 Canada

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

Following a survey conducted by Philadelphia Cargo-Claim Consultants, the grapes were found to be wet and sticky, scarred, shattered, and crushed, with cap stems not firmly attached. As a result, the grapes failed to grade U.S. No. 1 account condition.

**10.**                                                    **PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

**11.**                                                                 **WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Dennis Keeny/Joseph Smith | Philadelphia Cargo-Claim Consultants, 242 N. Kenswick Ave., Glenside, PA 19038 |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM  (in dollars) |
|---|---|

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 23,421.47 | | | 23,421.47 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *CVL S. Porra   Attorney in fact* | 516-714-4300 | 8/3/12 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

**INSURANCE COVERAGE**

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

| 15. Do you carry accident insurance? ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☐ No |
| --- |

| 16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☐ No | 17. If deductible, state amount. |
| --- | --- |

| 18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts). |
| --- |

| 19. Do you carry public liability and property damage insurance? ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☐ No |
| --- |

**INSTRUCTIONS**

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

**PRIVACY ACT NOTICE**

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:* The information requested is to be used in evaluating claims.
C.  *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

**PAPERWORK REDUCTION ACT NOTICE**

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**



# IQF DEL PERU S.A.

AV. ALBERTO DEL CAMPO 406 · SAN ISIDRO · LIMA · PERU
TELFS: 51-1-264-1014 FAX: 51-1-264-0417

**R.U.C. Nº 20100032709**

**FACTURA**
**INVOICE**

001-   0011662

A(TO)
DAVID OPPENHEIMER CO.
262 Chapman Road
Bellevue Building - Suite 204
Newark, DE 19702 U.S.A.

| TERMINOS TERMS | : | FOB CALLAO |
| VAPOR VESSEL | : | JENS MAERSK 1114 |

LIMA

7 de Noviembre del 2011
November 7, 2011

CONTRATO Nº
YOUR CONTRACT

GUIA Nº
GUIDE Nº       012-004018

| CANTIDAD QUANTITY | CODIGO CODE | DESCRIPCION DESCRIPTION | EMPAQUE PACKING | PRECIO PRICE | MONTO AMOUNT |
|---|---|---|---|---|---|
| 2,160 Boxes | 240360794 | UVA FRESCA FRESH GRAPE | 1 x 8.20 kg | US$ 30.0000 | US$ 64,800.00 |
| 2,160 Boxes | | TOTAL VALOR FOB CALLAO / TOTAL FOB CALLAO VALUE | | US$ | 64,800.00 |

SON: SESENTA Y CUATRO MIL OCHOCIENTOS Y 00/100 DOLARES AMERICANOS

CARGO HAS NOT BEEN REFUSED ENTRY BY ANY OTHER COUNTRY
PRODUCTO DE PERU / PRODUCT OF PERU

IQF DEL PERU S.A.

| PESO BRUTO GROSS WEIGHT | 20,130.00 kg    44,378.31 lb |
| PESO NETO NET WEIGHT | 17,712.00 kg    39,047.62 lb |
| CANTIDAD QUANTITY | 2,160 Cajas (20 pallets) |
| P. ARANCELARIA | 08.06.10.00.00 |

REG. EXPORT.0019-01-15
R.ADUO.810.606-03-DR-VI45040

ADQUIRENTE O USUARIO



| PACKING LIST: | 03 |
|---|---|
| VESSEL NAME: | JENS MAERSK 1114 |
| DATE OF LOADING | 11/07/2011 |
| ARRIVAL DATE: | 11/27/2011 |
| PORT OF ARRIVAL: | PHILADELPHIA |
| CONTENEDOR : | MNBU-004661-7 |

| COMODITY | VARIETY | PACK STYLE | SIZES | LABEL | # BOXES |
|---|---|---|---|---|---|
| FRESH GRAPES | FLAME | ZIP-BAGS | 600 | OPPENHEIMER | 216 |
| FRESH GRAPES | FLAME | ZIP-BAGS | 700 | OPPENHEIMER | 1728 |
| FRESH GRAPES | FLAME | ZIP-BAGS | 800 | OPPENHEIMER | 216 |
|  |  |  |  |  | 2,160 |

IQF DEL PERU S.A.

Av. Alberto del Campo # 405 - San Isidro, Lima - Perú Telf. 264-1014 Fax; 264-0417 E-mail: iqfperu@iqfperu.com
Planta Industrial: Panamericana Sur Km. 310, Ica - Telf. (056) 218830 Fax; (056) 218382 E-mail: ica@iqfperu.com
Panamericana Sur Km. 205.5, Chincha - Ica Telf. (056) 664370 E-mail: chincha@iqfperu.com



MINISTERIO DE AGRICULTURA



**SENASA**
Servicio Nacional de Sanidad Agraria
**PERU**

### CERTIFICADO FITOSANITARIO
### PHYTOSANITARY CERTIFICATE

Nº 0389678

| ORGANIZACIÓN DE PROTECCIÓN FITOSANITARIA DEL<br>PLANT PROTECTION ORGANIZATION OF<br>PERU | A<br>TO<br>DE(OF) | ORGANIZACIÓN DE PROTECCIÓN FITOSANITARIA<br>PLANT PROTECTION ORGANIZATION<br>USA |
|---|---|---|

#### DESCRIPCIÓN DEL ENVÍO · DESCRIPTION OF CONSIGNMENT

Nombre y dirección del exportador · Name and address of exporter   IQF del Perú SA.
Av. Alberto del Campo Nº 408 San Isidro Lima

Nombre y dirección declarados del destinatario · Declared name and address of consignee   David Oppenheimer & Co.
262 Chapman Road, Bellevue Bldg, Suite 201 Newark, DE 19702 USA

| Número y descripción de bultos · Number and description of packages | Marcas distintivas · distinguishing marks |
|---|---|
| 2160 Cajas | Oppenheimer |

| Lugar de Origen · Place of Origin | Medios de transportes declarados<br>Declared means of conveyance | Punto de entrada declarado<br>Declared point of entry |
|---|---|---|
| Ica - Perú | Marítimo | Philadelphia |

| Cantidad declarada y nombre del Producto<br>Name of product and declared quantity | Nombre botánico de las plantas<br>Botanical name of plants |
|---|---|
| 18,912 Kg de Uvas sin Pepa Flame Seedless | Vitis vinifera |

Por la presente se certifica que las plantas, productos vegetales y otros artículos reglamentados descritos aquí se han inspeccionado y/o sometido a ensayo de acuerdo con los procedimientos oficiales adecuados y se considera que están libres de plagas cuarentenarias especificadas por la parte contratante importadora y que se ajustan a los requisitos fitosanitarios vigentes de la parte contratante importadora, incluidos los relativos a las plagas no cuarentenarias reglamentadas.

This is to certify that the plants, plant products or other regulated articles described herein have been inspected and/or tested according to appropriate official procedures and are considered to be free from the quarantine pests specified by the importing contracting party and that they conform with the current phytosanitary requirements of the importing contracting party, including those for regulated non-quarantine pests.

#### TRATAMIENTO DE DESINFESTACIÓN O DESINFECCIÓN · DISINFESTATION AND/OR DISINFECTION TREATMENT

| Fecha · Date | Tratamiento · Treatment |
|---|---|
| 11-01-2011 | Inflant op Cold Treatment |

Producto químico (ingrediente activo) · Chemical Product (active ingredient)

| Duración y temperatura · Duration and temperature | Concentración · Concentration |
|---|---|
| | |

#### DECLARACIÓN ADICIONAL · ADDITIONAL DECLARATION

Consignment op Grape with cold Treatment 710 4-n 4.
Contenedor MNBU 004861-4
Precinto SENASA 344484

#### INFORMACIÓN ADICIONAL · ADDITIONAL INFORMATION

Nombre del funcionario autorizado
Name of authorized official   Ing. Jorge Calvet Seceter.

Lugar y Fecha de expedición
Place and date of issuance   Ica 01 de Noviembre del 2011

EL SENASA, sus funcionarios y representantes declinan toda responsabilidad financiera resultante de este certificado.

Este certificado ha sido adoptado por el Perú por Resolución Legislativa Nº 21176 concordante a la Convención Internacional de Protección Fitosanitaria de la FAO

 **Philadelphia Cargo-Claim Consultants**

♦ Marine Consultants ♦ Cargo Surveyors ♦ Loss Adjusters ♦ Recovery Specialists ♦
242 N. Keswick Ave.        Email: philly-cargo@comcast.net
Glenside, PA 19038         Phone: (215) 572-1030
                          Fax (215) 572-1031



SURVEY REPORT NO.:      08-1212      MARSH CLAIM NO. :      12-1-711369-2

*This report is issued for use in connection with the claim against the parties responsible, but does not imply that the loss is recoverable from underwriters.*

*This must depend upon the terms of the Policy of Insurance.*

| | | | |
|---|---|---|---|
| 1a. | *Supplier of the goods* | a. | IQF del Peru S.A. |
| 1b. | *Name of consignee of goods specified in annexed schedule* | b. | Oppenheimer |
| 1c. | *Name of applicant for survey* | c. | Oppenheimer |
| 1d. | *If goods transshipped, name(s) of original carrying vessel(s) and of transshipment port(s)* | d. | Jens Maersk V. 1114 Balboa, Panama Manzanillo, Panama |
| 1e. | *Name of vessel from which goods discharged* | e. | Maersk Brani V. 138N |
| 1f. | *Port at which goods discharged* | f. | Philadelphia, PA |
| 1g. | *Date of arrival of vessel at port of discharge* | g. | November 6, 2011 |
| 2a. | *Was clean receipt given to the vessel on discharge?* | a. | N/A |
| 2b. | *If not, then state exceptions noted on receipt* | b. | |
| 2c. | *Were the goods accepted by USDA by first rate?* | c. | 825 of the cases were inspected and failed to grade US No. 1. |
| 2d. | *If not, then state exceptions noted on receipt* | d. | Wet & Sticky, shatter, crushed berries, capstems and decay |
| 3a. | *Date of delivery to place where survey held* | a. | December 9, 2011 |
| 3b. | *Delay, if any, in taking delivery stated by consignee to be due to* | b. | No delay |
| 4a. | *External condition of packages when delivered to place where survey held, as reported by consignee* | a. | Sound |



**Philadelphia Cargo-Claim Consultants**
philly-cargo@comcast.net

**Jens Maersk**
**Maersk Brani**
08-1212   **Oppenheimer**

| | | | |
|---|---|---|---|
| 4b. | Was a clean receipt given at the time of delivery? If not, state exceptions noted on receipt | b. | N/A |
| 4c. | External condition of packages at time of survey | C | Sound |
| 5a. | Date of application for survey | a. | December 9, 2011 |
| 5b. | Performed by | b. | Ray McAlonan |
| 6a. | Delay, if any, in applying for survey due to | a. | N/A |
| 6b. | If survey not held in consignees' premises, state consignees' reason for not taking delivery | b. | |
| 7a. | Date and place of survey | a. | December 12, 2011 Manfredi Cold Storage |
| 8a. | Nature of packing | a. | Standard |
| 9a. | Description of loss/damage | a. | Physical damage sustained during US Customs inspection |
| 9b. | Cause, after examination, attributed by the survey to (The surveyor should state, possible, the circumstances in which loss/damage above referred to occurred) | b. | See Addendum |
| 10a. | Is underwriters' agent aware of any casualty suffered by the carrying vessel to which the loss/damage found might the attributable? If so, brief details should be given. | a. | No |
| 11a. | Has the shipping invoice been inspected? | a. | Yes |
| 12a. | On the date of arrival the sound market value of the damaged goods amounted to (State whether Duty Paid or in Bond). | a. | USDA SMV on date of arrival: $47,520.00 |

 **Philadelphia Cargo-Claim Consultants**
philly-cargo@comcast.net

**Jens Maersk**
**Maersk Brani**
**Oppenheimer**
08-1212

| | | | |
|---|---|---|---|
| 12b. | On the date of compromise or sale the sound market value of the damaged goods amounted to (state whether duty paid or in bond) | b. | USDA SMV on date of delivery/survey: $49,680.00 |
| 13a. | In the interest of all parties concerned, the damages has been assessed by way of compromise, and an allowance on arrived sound market value has been agreed amounting to | a. | N/A |
| 14a. | No compromise being agreed with consignee, the damaged goods were with our approval sold by public sale or private tender for account of consignee.<br><br>The proceeds as per attached account sales, amounted to (If for any reason the proceeds have not been taken over by the consignees, underwriter's agent should explain why). | a. | Residual Value:<br><br>$26,758.05 |
| 15a. | Duties payable on the goods in sound state are | a. | |
| 16a. | Has original/copy Bill of Lading been inspected? | a. | Photocopy enclosed |
| 16b. | What is the reference therein to the condition of the goods? | b. | TEMPERATURE: -0.5C |
| 17a. | Has consignee given notice of loss/damage to or made claim against? | a. | Yes |
| 17b. | If not, what does consignee give as reason? If notice given or claim made state: | b. | |
| 17c. | Date on which consignee state good delivered into his custody | c. | December 9, 2011 |
| 17d. | Date on which consignee gave notice of loss/damage or made claim and to whom addressed | d. | December 9, 2011<br>Maersk Line and Associates Warehousing Inc. |

♦ Marine Consultants ♦ Cargo Surveyors ♦ Loss Adjusters ♦ Recovery Specialists ♦



**Philadelphia Cargo-Claim Consultants**
**philly-cargo@comcast.net**

**Jans Maersk**
**Maersk Brani**
08-1212  **Oppenheimer**

| | | | |
|---|---|---|---|
| **17e.** | ***Summary of reply, if any, received (correspondence with carriers/bailees to be attached, if available).*** | **e.** | We are not aware of any response |
| **17f.** | ***Was a survey by carriers/bailees and consignee held?*** | **f.** | No. |
| **18a.** | **Further Remarks:** | **a.** | |

**SCHEDULE**

**MARKS AND NUMBERS:**
Bill of Lading: MAEU862893954
Container: MNBU0046617
2,160boxes

**NO. OF PACKAGES:**
2,040 cases

**QUANTITIES SOUND:**
0 cases sold for prices above SMV

**QUANTITIES MISSING OR DAMAGED:**
2,160 cases sold at prices below SMV or disposed of without residual value

**ADDENDUM**

On behalf of the underwriter for Oppenheimer, we were notified of a potential claim on December 9, 2011.

We were notified that the shipment was received in damaged condition as a result of being roughly handled during an Intensive CBP EXAM.

The container had been randomly chosen by US Customs and Border Patrol for an Intensive Inspection. The container was therefore diverted on December 2 to a Container Examination Service location, Associates Warehousing, for the CBP inspection.

During the Customs and Border Protection (CBP) inspection, the workers unloaded each carton off of the pallets. The CBP personnel manhandled the cartons and left a portion of the cargo in disarray. After the inspection the cartons were put back in the container but not stacked on pallets. The cartons and contents were unable to be palletized as intended due to the extent of the damages sustained.

On December 8 the container was returned to the terminal (PAMT). On December 9 the container was transported to Manfredi Cold Storage.

Both Maersk Line and Associates Warehousing were notified and invited to a joint

♦ Marine Consultants ♦ Cargo Surveyors ♦ Loss Adjusters ♦ Recovery Specialists ♦



**Philadelphia Cargo-Claim Consultants**
**philly-cargo@comcast.net**

**Jens Maersk**
**Maersk Brani**
08-1212  **Oppenheimer**

survey. Neither was in attendance during our inspection.

We inspected the subject shipment above which was discharged from the Maersk Brani and was then detained by the USDA.

The cartons were well constructed with double-wall sides and reinforced corners.

They were mishandled and stacked very poorly causing cartons to become crushed, torn, and compacted which also affected the product.

We recommended that Oppenheimer obtain a USDA Inspection to confirm the damages sighted.

We have been provided this USDA Inspection Certificate which shows that the grapes failed to grade U.S. No. 1 account condition. The lot failed due to: wet and sticky, scarred, shattered, and crushed berries, cap stems were not firmly attached.

We were informed that 825 cases were significantly affected and were to be sold at salvage value. The remaining 1,335 cases were reportedly received without exception.

We have since been submitted a claim in the amount of $25,587.52. The loss amount was calculated using the SMVs at the time of delivery. The claim amount also includes additional costs which are being submitted for consideration.

We have adjusted the loss by calculating the loss using the SMVs on the date of arrival. We have calculated the loss at $23,421.47.



| Philadelphia Cargo-Claim Consultants |
| philly-cargo@comcast.net |

Jens Maersk
Maersk Brani
08-1212 Oppenheimer

## LOSS CALCULATION

### USDA SMVs on date of arrival
MNBU0046617

| Size | Cases | SMV | Sales | Total SMV | Orig. Sales | Credits | Actual Sales | Loss |
|------|-------|-----|-------|-----------|-------------|---------|--------------|------|
| 900 | 157 | $24.00 | $21.42 | $3,768.00 | $3,363.10 | $170.00 | $3,193.10 | $574.90 |
| 700 | 1529 | $22.00 | $15.17 | $33,638.00 | $23,188.89 | $0.00 | $23,188.89 | $10,449.11 |
| 500 | 216 | $20.00 | $1.74 | $4,320.00 | $376.06 | $0.00 | $376.06 | $3,943.94 |
| 900 | 59 | $24.00 | $0.00 | $1,416.00 | $0.00 | $0.00 | $0.00 | $1,416.00 |
| 700 | 199 | $22.00 | $0.00 | $4,378.00 | $0.00 | $0.00 | $0.00 | $4,378.00 |
| | 2160 | | | $47,520.00 | $26,928.05 | $170.00 | $26,758.05 | $20,761.95 |

| Additional Costs | |
|---|---|
| USDA | $180.04 |
| Warehouse Pallets | $61.80 |
| Customs Exam | $2,417.68 |
| Total Costs | $2,659.52 |
| | |
| **Total Loss** | **$23,421.47** |

This loss is fair and reasonable for the extensive damages caused during the CBP inspection.

### LIABILITY CLAUSE
*These findings are based upon the facts presently known and believed to be pertinent, considering the scope of our involvement--as defined by the parameters detailed or implied in the request for our involvement and/or as protracted and developed since prior assignments with our principles to this assignment. This report is believed to be complete inasmuch as-is the information provided in conjunction with its completion, but because our perception of the pertinent facts could alter with consideration of additional information or unconsidered circumstances governing their contextual significance, the right to amend or revise this report is reserved.*

*Unless otherwise indicated, the completion of this report and the events leading thereto occurred without knowledge of policy terms and conditions--specific to this consignment. As such, our survey findings and final recommendations are submitted without prejudice of claim rights arising governed by the applicable policy terms.*



Philadelphia Cargo-Claims Consultants
Dennis Keeny

Joseph Smith

♦ Marine Consultants ♦ Cargo Surveyors ♦ Loss Adjusters ♦ Recovery Specialists ♦

3

# MAERSK LINE

| NON-NEGOTIABLE WAYBILL | scac MAEU |
| --- | --- |
| | B/L No. 862893954 |

| Shipper | Booking No. |
| --- | --- |
| IQF DEL PERU SA | 862893954 |
| SHIPPER | |
| AV ALBERTO DEL CAMPO 405 | Export references Svc Contract |
| SAN ISIDRO, CC-L LIMA, PERU PE | 196728 |

| Consignee |
| --- |
| DAVID OPPENHEIMER CO (EC) |
| 262 CHAPMAN RD, BELLEVUE BLDG, SUITE, 204 NEWARK, DE |
| 19702 U.S.A. |
| PH:(302)533-0779 FX:(302)368-6053, CONTACT:TOM |
| VERBITSKI, TOMVE@OPPY.COM |

| Notify Party |
| --- |
| BARTHCO INTERNATIONAL (EC) |
| THE NAVY YARD,5101 S. BROAD STREET, |
| PHILADELPHIA, PA 19112-1404, USA |
| CONTACT:BILL PAGAN |
| PH:215-238-8600 FX:215-230-0570 |
| EMAIL:BFAGAN@OHLOGISTICS.COM |

This contract is subject to the terms and conditions, including the law & jurisdiction clause and limitation of liability & declared value clause, of the current Maersk Line bill of lading (available from the carrier, its agents and at www.maerskline.com), which are applicable with logical amendments (mutatis mutandis). To the extent necessary to enable the Consignee to sue and to be sued under this contract, the Shipper on entering into this contract does so on his own behalf and as agent for and on behalf of the Consignee and warrants that he has the authority to do so. The shipper shall be entitled to change the Consignee at any time before delivery of the goods provided he gives the Carrier reasonable notice in writing.

Delivery will be made to the Consignee or his authorized agent on production of reasonable proof of identity (and, in the case of an agent, reasonable proof of authority) without production of this waybill. The Carrier shall be under no liability whatsoever for misdelivery unless caused by the Carrier's negligence.

Onward inland routing (Not part of Carriage as defined above i.e. for account and risk of Merchant)

| Vessel | Voyage | Place of Receipt. Applicable only when document used in Multimodal transport |
| --- | --- | --- |
| JENS MAERSK | 1114 | |

| Port of Loading | Port of Discharge | Place of Delivery. Applicable only when document used in Multimodal transport |
| --- | --- | --- |
| Callao | Philadelphia | |

## PARTICULARS FURNISHED BY SHIPPER

| Kind of Packages; Description of goods; Marks and Numbers; Container/Seal No. | Weight | Measurement |
| --- | --- | --- |
| 1 Container Said to Contain 2160 BOXES | 20130.000 KGS | 34.000 CBM |
| 20 PALLETS CONTAINING: | | |
| 2,160 BOXES FRESH GRAPES AND TEMPERATURE RECORDER# 162604 AND 16279-8 | | |
| Export references: | | |
| Oppenheimer | | |
| MNBU0046617 ML-PE0120585 40 REEF 9'6 2160 BOXES 20130.000 KGS 34.000 CBM | | |
| Temperature: -0,5 C | | |
| Shipper Seal : IQF0002303 | | |
| Goods carried under this bill of lading are subject to cold treatment for which efforts is being charged. For such goods, carrier undertakes to exercise due diligence to provide properly approved containers and temperature monitoring/recording devices. Carrier retains the right to complete cold treatment procedure if cold treatment has failed in the first instance and where the practical storage life of the commodity allows Carrier to complete cold treatment and Merchant agrees to take delivery of the container/commodity when the | | |

Above particulars as declared by Shipper, but without responsibility of or representation by Carrier.

| Freight & charges | Rate | Unit | Currency | Prepaid | Collect |
| --- | --- | --- | --- | --- | --- |
| Basic Ocean Freight | 3726.00 | Per Container | USD | | 3726.00 |
| Bunker Adjustment Factor | 950.00 | Per Container | USD | | 950.00 |
| Submission of Cargo Declarat | 25.00 | Per Bill of Lading | USD | | 25.00 |
| Cold Treatment Charge | 900.00 | Per Container | USD | | 900.00 |
| Documentation Fee - Destinat | 50.00 | Per Bill of Lading | USD | | 50.00 |
| Handling Charge - Destination | 450.00 | Per Container | USD | | 450.00 |
| Documentation Fee - Origin | 55.00 | Per Bill of Lading | USD | 55.00 | |
| Handling Charge - Origin | 130.00 | Per Container | USD | 130.00 | |

| Carrier's Receipt. Total number of Containers or packages received by Carrier. | Place of Issue of Waybill | Shipped, as far as ascertained by reasonable means of checking, in apparent good order and condition unless otherwise stated herein the total number or quantity of Containers or other packages or units indicated in the box opposite entitled "Carrier's Receipt" |
| --- | --- | --- |
| 1 container | Lima, Peru | |
| Shipped on Board Date (Local Time) | Date Issue of Waybill | |
| 2011-11-08 | | |

Declared Value Charge (see clause 7.3 of the Maersk Line Bill of Lading) If a Declared Value of US$

Signed for the Carrier APL Peru - Maersk Line as Agent for the Carrier

Maersk Line Peru S.A.C.
As Agent(s) for the Carrier

This transport document has one or more numbered attachments

B/L: 662893954          Attachment No.: 1/1

extended cold treatment has been completed. Further Merchant agrees to hold harmless
and indemnify carrier for any and all consequences arising from or out of goods being
carried at the applicable Protocol temperature.
Goods shipped in refrigerated container(s) set at shipper's requested carriage temperature
as per above
SHIPPER'S LOAD, STOW, WEIGHT AND COUNT
FREIGHT COLLECT
"THE CARRIER DOES NOT ACKNOWLEDGE OR ACCEPT ANY RESPONSIBILITY OR LIABILITY
WHATSOEVER FOR (16258-7 AND 16258-8) RECORDERS AND THE MEASUREMENTS
REGISTERED BY THEM."
CY/CY

| Freight & Charges | Rate | Unit | Currency | Prepaid | Collect |
|---|---|---|---|---|---|
| Panama Transit Fee | 200.00 | Per Container | USD | | 200.00 |
| Port Security Charge - Import | 5.00 | Per Container | USD | | 5.00 |
| Carrier Security Charge | 9.00 | Per Container | USD | | 9.00 |
| Total USD | | | USD | 185.00 | 6315.00 |

# EXHIBIT 2

6650 Telecom Drive
Indianapolis, IN 46278



U.S. Customs and
Border Protection

JUL 11, 2013

CERTIFIED MAIL RETURN RECEIPT REQUESTED

David Oppenheimer & Co.
c/o Chalos & Co, P.C.
55 Hamilton Avenue
Oyster Bay, New York 11771

To David Oppenheimer & Co.:

This is in response to the claim for property damage in the amount of $23,421.47, submitted to U.S. Customs and Border Protection (CBP) pursuant to the Federal Tort Claims Act (28 U.S.C. 2671, *et seq.*) for property damage to a container of grapes, allegedly caused during a CBP inspection at the Port of Philadelphia on or about December 2, 2011.  Your claim alleges that CBP "roughly handled" cartons containing the grapes and, as a result, the cartons "could not be stacked on pallets as intended, due to the damages sustained."  As a result, you claim that the grapes "failed to grade U.S. No. 1 account condition."

In addition to your completed CBP Standard Form 95, "Claim for Damage, Injury, or Death," CBP received the following documentation in support of your claim: 1) a Peruvian Phytosanitary Certificate for the grapes; 2) a survey report prepared by Philadelphia Cargo-Claim Consultants; 3) a Non-Negotiable Waybill for the container; and 4) an invoice for the sale of the grapes from IQF Del Peru S.A. to David Oppenheimer & Co.

We have given full consideration to the facts and circumstances of this incident and your claim is denied based upon the applicability of Sections 2860(a) and (c) of the FTCA.

Under the FTCA, the United States shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances.  28 U.S.C. §§ 1346(b) and 2674.  The FTCA's broad waiver of sovereign immunity is subject to several exceptions that are contained within 28 U.S.C. § 2680.  One of the exceptions exempts the government from liability for "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer." 28 U.S.C. § 2680(c).  Therefore, section 2680(c) bars recovery for any damage sustained during the detention of any goods or merchandise by CBP.  In addition, the exception found in 28 U.S.C. § 2680(a) bars claims that are based upon the exercise or performance, or the failure to exercise or perform, a discretionary function or duty on the part of a federal agency or government employee. The decision to perform a customs inspection on a particular cargo shipment, and the method of such inspection, is, as a matter of law and policy, left to the discretion of CBP and its officers.

David Oppenheimer & Co.
Page 2

     It appears that the shipment of grapes was damaged either during a lawful CBP detention and secondary inspection, or during the re-packaging of the grapes by non-CBP personnel following the completion of a lawful CBP detention and inspection. In the case where the damage occurred during the lawful detention and inspection, 28 U.S.C. § 2680(a) and (c) both apply to exempt liability. There is no indication that CBP personnel acted negligently or recklessly, and even if they had, it is clear that the FTCA exemptions would still apply. In the alternative, CBP is not liable under circumstances where the damages are committed by non-CBP personnel and/or independent contractors under the Act.

     If you are dissatisfied with this decision, you may file suit in an appropriate U.S. District Court not later than 6 months from the date of mailing of this decision letter.  See 28 U.S.C. § 2401(b).

     Should you have any questions regarding this matter, please contact Leslie Keyes in the CBP Office of Assistant Chief Counsel (Baltimore) at (410) 962-4610.

Sincerely,


Pamela A. Miller
Director, National Finance Center